court held that the evidence was not sufficient to sustain the verdict, saying:

"Death from pneumonia is not ordinarily the necessary and natural result of an injury to the fibula bone, and when, as in this case, it is sought to establish almost entirely by expert evidence that such result actually followed, the connection between cause and effect should be made so clear that the conclusion can be said to be the reasonable result of the proof."

And this principle was applied by this court in Hoey, Adm'x, v. Met. St. Ry. Co., 70 App. Div. 63, 74 N. Y. Supp. 1113, McQuade v. Met. St. Ry. Co., 84 App. Div. 637, 82 N. Y. Supp. 720, and Koch v. Zimmerman, 85 App. Div. 370, 83 N. Y. Supp. 339.

The plaintiff relies principally upon Turner v. Nassau El. R. R. Co., 41 App. Div. 213, 58 N. Y. Supp. 490; but in that case the expert testimony was sufficient, if believed, to sustain a finding that the injury caused the death, the experts having testified in that case that the deceased would not have had delirium tremens except for the accident. Assuming that such testimony would have sustained this verdict, its absence in this case prevents the Turner Case from being an authority for the plaintiff.

I think therefore that the verdict of the jury that the injury was the proximate cause of the decedent's death was not sustained by the evidence and the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.

_____

(135 App. Div. 136.)

NATIONAL CONDUIT & CABLE CO. v. COMMERCIAL UNION ASSUR. CO.

(Supreme Court, Appellate Division, First Department.    December 17, 1909.)

INSURANCE (§ 504*)—FIRE INSURANCE—LIABILITY OF INSURER.

An insurance company issued a standard fire policy for $20,000. A partial loss amounting to $69,000 occurred. At a time when the total insurance amounted to $400,000, the company wrote to the broker through whom the insurance was written requesting return of the policy for cancellation. The broker, before the loss, procured $15,000 of insurance from other companies, and so informed the company. The new insurance had not been approved by insured at the time of the loss. The company's notice of cancellation of the policy was received on the day of the loss, and thereafter insured approved the new insurance, which was paid. Held, that insured was entitled to recover from the company the proportional amount of the loss based on a valid existing insurance for $20,000, and not for $5,000, as the company was not entitled to any credit because of the new insurance except as to the total insurance in force; its notice of cancellation taking effect by its terms only at the end of five days after notice to the insured.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 504.*]

Appeal from Judgment on Report of Referee.

Action by the National Conduit & Cable Company against the Commercial Union Assurance Company.    From a judgment entered on the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

report of a referee dismissing the complaint on the merits, plaintiff appeals. Reversed, and judgment ordered for plaintiff.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Clarence G. Galston, for appellant.

Butler, Notman & Mynderse (Frederick B. Campbell, of counsel, and John F. Devlin, on the brief), for respondent.

CLARKE, J. The plaintiff is a domestic manufacturing corporation. Its plant is located at Hastings-on-Hudson, N. Y. The defendant, an insurance company, issued its policy, by which it insured the plaintiff against loss to its property by fire for the term of one year from noon June 14, 1899, to June 14, 1900, in the sum of $20,000. The policy was a New York standard fire insurance policy to which was attached the 100 per cent. co-insurance clause. On October 13, 1899, a fire occurred at the plaintiff's plant causing a partial loss in the sum of $69,857.68. At the time of the fire, the sound value of the property insured was $421,455.26, and the plaintiff had in various fire insurance companies policies aggregating $415,000. The loss was duly adjusted, and it was ascertained that the proportionate amount of loss payable by the defendant was the sum of $3,315.06, which the defendant has not paid, though it was given immediate notice of loss and was duly served with proof of loss on November 29, 1899. All the insurance companies except the defendant have paid their proportionate shares of the plaintiff's loss as adjusted. On October 13, 1899, plaintiff received from the defendant notice of its intention to cancel the policy in suit at the expiration of five days from October 12, 1899. On October 18th defendant wrote to plaintiff:

"In accordance with cancellation notice, * * * your policy * * * was canceled at noon on October 17, 1899. All liability of this company ceased on the 17th inst. We herewith tender you the unearned premium."

On November 9, 1899, the defendant returned to plaintiff the sum of $39.50 as return premium upon the policy in suit as canceled on October 17, 1899. On February 3, 1900, the defendant tendered to the plaintiff the sum of $829.61, the full amount of proportionate loss payable by it under the policy in suit, and the plaintiff refused to accept the same.

The defense interposed is: That on September 28, 1899, the defendant notified the plaintiff that it did not desire to continue the policy of insurance as written, and requested that the policy be returned to it canceled; that the plaintiff secured insurance from two other fire insurance companies for a total sum of $15,000 in part replacement of its policy of $20,000; that thereby the liability of the defendant upon the policy in suit was $5,000; and that before the commencement of this action it had tendered to the plaintiff the sum of $829.61, the full amount of the proportionate loss payable by it with its interest.

The plaintiff conducted its insurance through the firm of Polhemus Bros., regular insurance brokers in New York City. These brokers had instructions to keep an insurance of about $400,000 upon the property with a leeway of about $10,000. The usual course of business

between the plaintiff and Polhemus Bros. was that the latter, on behalf of plaintiff, would apply to the several insuring companies for policies. The companies, upon acceptance of the application, would deliver the policies to Polhemus Bros., who would deliver them to the plaintiff subject to its approval. If they were not satisfactory to the plaintiff, they were returned to Polhemus Bros. In the event of the cancellation of a policy, the unearned premium would be returned by the company to Polhemus Bros. by check to their order, and they in turn would credit the plaintiff with the amount upon the account in their books. On July 1st, prior to the fire, there was in effect insurance covering the plaintiff's property a total of $405,000, of which $5,000 expired in the fore part of that month. On August 1st and September 28th the amount of plaintiff's insurance was exactly $400,000, including the policy in suit, which had been issued to, approved, accepted, and retained by the plaintiff.

On September 28, 1899, the defendant wrote to Polhemus Bros.:

"Referring to our policy No. 4,345,448 in favor of the National Conduit & Cable Company, we are obliged to ask you to cancel same. After considering the matter further we feel the rate of 30¢ is too low. We would not care to entertain it at less than 75¢ and you would oblige us very much by returning the contract to this office canceled."

On October 12, 1899, Polhemus Bros. wrote to the defendant:

"Replying to your favor of the 28th ult., in reference to the cancellation of the above-named policy, would say that $15,000 of this line has been replaced as follows: 25,598, Philadelphia Underwriters, $10,000. 535 Magdeburg, $5,000. The balance, $5,000, we believe has been accepted by an agent at Yonkers and are now waiting for the policy. We have written him again to-day for the same, and as soon as we receive it we will deliver the policies and return yours at once. Trusting this will be satisfactory to you for the present, we remain."

On October 13th, the date of the fire, there was therefore outstanding insurance upon plaintiff's property with these two new policies, $415,000. These two new policies had not at that time been submitted to, approved by, or delivered to the plaintiff. It had in its possession the policy in suit, and had not been notified of any intention or desire to have it surrendered or canceled, or that other policies be substituted therefor. The notice of cancellation within five days thereafter was received by the plaintiff on the day of the fire, and subsequently thereto the return premium was sent by the defendant calculated to October 17th, the date indicated for cancellation by it in its notice dated October 12th. Subsequently the plaintiff approved of the two policies in the Philadelphia Underwriters and the Magdeburg, and said companies thereafter paid on such policies their proportionate shares of the loss. The plaintiff claims that it was insured for the full amount of $415,000, and that it is entitled to recover from the defendant the proportional amount of the loss proved upon its uncanceled and unsurrendered policy of $20,000. The defendant claims that it should receive credit upon its full amount of insurance of $20,000 for the $15,000 of insurance in these two other companies, while it admits that it is liable for $5,000 upon its policy.

I know of no principle at law or in equity which would permit of any such credit to be given to defendant upon its existing contract obligation, because two other companies have assumed a contract obligation of $15,000 upon their part. The plaintiff had no knowledge at the time of any substitution of policies which would relieve in whole or in part the defendant from its contract obligation. Defendant had the right at any time before the fire, upon giving the required notice and the return of the proportional share of the premium, to cancel its contract and to end its obligation. It undertook to exercise such right, not at the time that it notified Polhemus Bros. that it desired to be relieved of its obligations, but on the 12th day of October, the day before the fire, when it was too late, and it did not then indicate a desire to reduce its obligation to $5,000 because other insurance had been effected in other companies to the extent of $15,000, but served the five days' notice of cancellation of the full amount. It is no concern of the defendant that at the time of the fire these new policies had not been submitted to and approved by the plaintiff or premiums paid thereon, nor is it in a position to claim that by the subsequent acceptance of said policies the benefit thereof should accrue to it by the proportional lessening of its obligation.

It is conceded that the sound value of the property insured was sufficient to warrant a total insurance of $415,000, and I do not see how the defendant can complain of the amount of insurance carried by the plaintiff, conceded to be proper and legal by the insurers to that extra amount.

The defendant concedes its liability of a valid existing insurance to the amount of $5,000. Its liability could only be predicated upon a valid, existing, uncanceled, and unsurrendered policy of insurance. The only policy it had issued was for $20,000, and if it was liable at all it must be upon insurance for that amount. Its request to Polhemus Bros. was not to reduce the amount of its insurance, but for a surrender of its entire policy. It concedes that this letter did not constitute a cancellation of its policy because it admits its liability for $5,000, and it followed this letter by a formal notice of cancellation on the 12th of October. How a formal written contract of insurance, under seal, can be reduced from $20,000 to $5,000 under the facts and circumstances disclosed in this record, we are unable to perceive.

We think the plaintiff was entitled to recover the proportional amount of his loss based upon a valid existing insurance from the defendant in the sum of $20,000, and that therefore the judgment appealed from should be reversed, and, as facts are sufficiently found in the referee's decision, a judgment should be entered for plaintiff for the sum of $3,315.06, with interest, together with the costs and disbursements of this action. All concur.